United States Courts
Southern District of Texas PR
FILED

AUG 21 2001

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DISTRICT

SCOTT MARK LAIR,
MELINDA D. YATES,
Plaintiffs,

Civil Action No. C-01-381

v.

MIKE PURDY, individually and as Warden FCI-TRV, LARRY SANDSON, individually and as Captain FCI-TRV, ROBERT SWAIN, individually and as Lieutenat FCI-TRV, MIKE CARVAJAL, individually and as Lieutenat FCI-TRV, BERNIE AYALA, individually and as Correction-Officer FCI-TRV, MIKE RUIZ, individuall and as Deputy Sheriff Live Oak County, and OTHERS as yet unknown, JOHN DOE one through five,
Defendants.

COMPLAINT

## Jurisdiction

1. This action is brought pursuant to 42 U.S.C.,Section 1983, 1985, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C.,Section 1331 and the aforementioned statutory and constitutional provisions.

2. The amount in controversy exceeds $75,000.00 excluding interest and cost.

## Venue

3. Venue in this action is properly situated in United States District Court for the Southern District of Texas, Corpus Christi Division, pursuant to 28 U.S.C.,Section 1391.

4. Plaintiff, Scott Mark Lair, is a federal prisoner currently confined in FCI-El Reno in the state of Oklahoma.

5. Plaintiff, Melinda Darlene Yates, is a citizen of the state of Texas.

6. Mike Purdy is Warden of FCI-TRV, he is sued individually and in his official capacity.

7. Larry Sandson is Captain of FCI-TRV, he is sued individually and in his official capacity.

8. Robert Swain is Lieutenat of FCI-TRV, he is sued individually and in his official capacity.

9. Mike Carvajal is Lieutenat of FCI-TRV, he is sued individually and in his official capacity.

10. Bennie Ayala is a Correction Officer at FCI-TRV, he is sued individually and in his official capacity.

11. Mike Ruiz is now a Correction Officer at FCI-TRV, previously a Deputy Sheriff for Live Oak County, he is sued individually and in that official capacity.

12. At all times relevant hereto and in all actions described herein, defendants were acting under color of law and under color of authority as to their jobs, Purdy, Sandson, Swain, Carvajal and Ayala as prison employees, and Mike Ruiz as deputy sheriff of Live Oak County, Texas.

## NATURE OF THIS CASE

13. The incidents on which this lawsuit is based occurred as a result of malicious, deliberate indifference, intentional, reckless and negligent misconduct by the defendants against the plaintiffs.

14. This action is brought to seek fair compensation for the catastropjic financial injury humiliation, mental suffering physical abuse and anguish inflicted upon the plaintiffs as a result of the wrongful acts of the defendants
15. This action is also filed to ensure the these defendants and others are deterred from engaging in such wrongful activity again.

Facts

16. Scott Mark Lair is a federal prisoner who is serving a sentence of 250 months and is presently confined at FCI El Reno, in central Oklahoma. During the time the incidents described below Lair was confined at FCI TRV a period of about two years from August 1998 through June of 2000
17. Shortly after Lair being sentenced to federal prison, Lair assigned legal power of attorney to Melinda Darlene Yates so that she could handle Lairs financial affairs on the outside. Shortly after Lairs arrival at FCI TRV, Yates started to visit Lair.
18. During these visits Lair and Yates were singled out and harrassed and forced to adhere to a different set of rules than other persons visiting during the same time. These rules were made by Lt. Swain and Correction Officer Ayala.
19. As a result of this treatment Lair and Yates filed complaints against Swain ans Ayala, Lair filed a complaint within the prison (administrative remedy) while Yates wrote a letter to Congressman Lamar Smith.

20. On plaintiffs Yates third visit to see Lair she was not allowed to visit due to faulty testing procedures used to test visitors before entering the visiting room by use of the IONTRACK SYSTEM drug screening unit used to screen visitors for the presence of drugs. Defendants Swain and Ayala were assigned to the calibration and operation of the IONTRACK unit for that day.

21. During this same time the defendants would allow other visitors, who tested positive on the drug screen unit, to enter the restroom and wash their hands, and take the test a second time. Plaintiff Yates was not allowed a second chance.

22. The more Lair and Yates complained about the treatment the plaintiffs were recieving, the worse the harassment became. At the same time as this Lair caught a officer stealing Lairs addressbook out of Lairs cell in a pillow case. When Lair confronted the officer, the officer lied to Lair, to cover up for his actions, admitting later to Mr. Parker (unit manager) and Lair, that Lt. Swain had sent him to copy Lairs book.

23. During this time plaintiff Yates was attempting to get a medical device (TENS UNIT) approved for her use while visiting, much the same way as other visitors were allowed bring in simular devices. Plaintiff Yates request was never responded to by Capt. Sandcon.

24. On Yates fourth or fifth weekend to visit Lair, the plaintiffs were placed on "Restricted Visiting", where they were forced to sit in a special area, and not allowd free movement through out the visiting room, as were other visitors. When the plaintiffs complained about this unfair treatment, the plaintiffs were told it was due to "inapropriate behavior" in the visiting

00234

room, defendant Swain later admitted to making these false accusations to plaintiff Lair.

25. While the adminstrative appeal, to being taken off restricted visiting, was being processed plaintiffs Lair and Yates visiting was denied. When plaintiffs contacted Warden Purdy as to the reason for no longer allowing plaintiffs to visit, Warden Purdy responded by stating "Without you detailing specific information concerning social visits which you claim have been denied, an adequate response can not be afforded to you "

26. On April 21, 1999 Lair was placed in the SHU (hole) at FCI TRV without being given a reason for Lairs removal from the general prison population. It would be 14 months,(420 days) before Lair would be released from the FCI-TRV SHU

27. On April 22 1999 plaintiff Lair was interviewed by Lt Swain, Jody Warren (OIG) Office of the Inspector General, and a FBI agent still unknown to the plaintiffs. Plaintiff Lair was informed that he was a big drug dealer and that he and plaintiff Yates were working with a corrupt prison guard to smuggle drugs into FCI-TRV.

28.Plaintiff Lair was questioned by Lt. Swain about the where abouts of plaintiff Yates. Lair was told that all the OIG FBI and Swain wanted was the name of the Correction Officer who was bringing drugs into the prison, and if Lair and Yates cooperated with them, that Lairs prison sentence would be cut in half. Also Lair was told if he refused to help them, that more time would be added to Lairs sentence. Plaintiff Lair told all three of the persons present that they were crazy.

29. One month later Lt Swain called Lair into his office from Lairs cell in SHU and attempted to question Lair Lt Carvajal was also present and participated in the attempt to question Lair. The topic of this questioning was plaintiff Yates and how Lair and Yates could have their visits returned as soon as Lair told them what they wanted to know. Plaintiff Lair at that time stated he didn't know anything to tell them.

30. One week later Yates called the prison, as she had been calling on a weekly basis to see why we were not allowed to visit and also to see if the visits had been reinstated When Yates called the prison on a Thursday to inquire about the status of plaintiffs visits Yates was told that the visits had been reinstated and that we could now visit. To make sure Yates called the prison again the next day and was once again told that she would be allowed to see Lair.

31. On May 28, 1999 plaintiff Yates drove to Three Rivers from the San Antonio area and rented a motel room at a local motel where Yates stayed when in the area. About 5:00pm of this date Yates proceeded to the prison for the visit.

32. Yates was stopped in front of the prison by Live Oak County Sheriff Deputy Mike Ruiz for "swerving" on the roadway and told by Mike Ruiz that he needed to search her truck for "guns and drugs". Yates was placed under arrest for traffic violations and taken to the Live Oak County Jail and told she must post bond on the traffic tickets. This incident caused Yates much distress and an exhaustion of her financial resources

33. While Yates was in custody of Mike Ruiz, a copy of Yates and Lairs personal banking records was photocopied, along with other items in plaintiff Yates possession. Yates was interrogated while in custody of Mike Ruiz about hers and Lairs involvement in the ongoing investigation at FCI-TRV.

34. The next day, a Saturday, Yates posted bond on the traffic tickets and returned to her motel room to clean up before going to the prison. When Yates entered the room she noticed some items had been moved about and was missing some money she had in her possession the day before. The room appeared to have been gone through by someone.

35.When Yates arrived at the prison she was told that the computer was down and she would have to wait. After a long wait Yates was told that she had been misinformed that plaintiffs visits were still suspended by orders of Captain Sandson and Lt. Swain. Yates was treated in a very unprofessional manner and told to get off the prison property. Yates left in tears

36. Shortly after this incident of the arrest of plaintiff Yates for traffic tickets, which were later dismissed, an unknown Lt. appeared at Lairs cell door in the SHU and kicked the door stating "Lair, you have a visit." and laughed to himself real loud as he walked away from the cell door. This is a sample of the abuse Lair suffered while housed in the SHU FCI-TRV. There was no visiting allowed for over two years.

37. During this time Lair and Yates sought the services of an attorney in Corpus Christi, who wrote a letter to Warden Purdy inquiring about the way the plaintiffs were being treated.

00237

38. Shortly after plaintiffs sought the servises of attorney Eric Perkins, plaintiffs legal mail, that plaintiff Lair was allowed to seal, was opened and read by Lt. Swain, and others. On occassion the mail would be returned to Lair opened and other times it would arrive 20 days later at attorney Perkins office, and sometime the mail that plaintiff Lair sent would never arrive at all.

39. At least twice, possibly more, plaintiffs attorney tried to visit plaintiff Lair at FCI-TRV, calling ahead and making an appointment, only to arrive at the prison on time and there would be no one there to process him into the prison. He left without seeing the plaintiff.

40. Shortly after plaintiff Lair was put in SHU he repeatedly made request for his legal property. Lair was told that unless he could show a "pending court deadline" his property would be given to him when staff got around to it. Some was never returned.

41. On one occassion plaintiff received some legal books in the mail which were sent directly from the publisher, rather than give these to Lair, they were placed in the property room. On more than one occassion when Lair recieved legal mail from an other attorny, in this case trial transcripts, they were returned to the attorney in Houston with no reason given for their return.

42. The time that plaintiff Lair was housed inFCI-TRV SHU there was very limited access to legal materials, and only one manual typewriter, that stayed broken much of the time.

43. Much of the time plaintiff Lair was housed in FCI-TRV SHU he was forced to live in cells that flooded whenever it rained or sewer water back flowed into the cell due to faulty plumbing. Captain Sandson, under the approval of Warden Purdy, along with Lt. Carvajal and Swain, used the more frequently flooded cells to house prisoners who had not cooperated with them. Due to the filthy, unhealthy conditions in the FCI-TRV-SHU plaintiff Lair suffered from open sores on his body.

44. On Feb. 23, 2000, plaintiff Lair was given an incident report that was completly fabricated by Lt. Swain. In short, the report stated that plaintiffs Lair and Yates bought drugs from person that they didn't know, and gave the drugs to others that they didn't know.

45. One line reads;"Nancy Hazeltine and Melinda Yates were involved in some speed deals on the street." The faulty charges go on to make statements by Lt. Swain of who we had drug dealings with, however none of the mentioned persons were ever charged with any wrong doing. The plaintiffs were singled out by Lt.Swain.

46. On May 15, 2000 plaintiff Lair was found guilty of the fabricated incident report, without being provided all of his due process rights in 28 CFR 540-541. At that time the sanctions placed on Lair included loss of visiting for one year, after already having had plaintiffs visits denied for over one full year.

47. Defendants engaged in unlawful and unconstitutional investigative techniques to intimidate the plaintiffs , these activities were done by the defendants in an attempt to obtain publicity for themselves and seek career advancement.

48. The unlawful activites were done by the defendants in an attempt to punish plaintiffs Lair and Yates for exercising their constitutionally protected rights. By concealing and distorting the evidence as they did, the defendants acted outside their discretion, violated their employers policies and procedures, and knowingly violated plaintiffs clearly established Constitutional rights.

Count One

49. Defendants violated the plaintiffs First Amendment rights through the arbitrary use of the IONTRACK drug screening unit to deny plaintiffs visiting, placing plaintiffs on restricted visiting without a hearing, and by futher suspending plaintiffs visits by bringing false charges against the plaintiffs on more than one occasion.

Count Two

50. Defendants violated plaintiff Lairs clearly established rights to due process under the Fifth Amendment as laid out in 28 C.F.R.,Section 541.22, in the manner in which the defendants falsified documents relating to the placement of Lair in SHU, as well as the false or nonexistant reasons for keeping Lair in SHU for an extended period of time. (420 days)

51. Defendants futher violated Lairs constitutiona rights under the Eighth Amendment, which provides for protection from cruel and unusual punishment, by housing Lair in a location in the prison (SHU) with faulty plumbing, exposing plaintiff to raw-sewage which in combination with forced idleness, caused Lair to suffer from bed-sores,

00240

Count Three

52. Defendant Ruiz, acting under color of state law, as well as acting in conjuction with other defendants, conspired to violate the plaintiffs rights under the First, Fourth and Fourteenth Amendment of the Constitution. Defendant Ruiz was empolyed as a deputy sheriff of Live Oak County, Texas when the defendants conspired to set plaintiff Yates up on a traffic stop, which was later dismissed, under the pretense of being able to visit Lair at FCI-TRV. Yates was forced to endure an illegal arrest the financial loss of having to post bond on the charges, humiliation and extreme mental anguish.

53. Plaintiff Lair suffered as well as a result of the actions of the defendants, in that some of the items in plaintiff Yates possession were photocopied and entered into evidence at Lairs prison hearing (DHO) which were used to find Lair guilty.

Count Four

54. Defendants violated plaintiff Lairs rights of access to the courts and to his attorney, under the First Fifth Sixth and Fourteenth Amendment by opening and reading letters to and from plaintiffs attorney, not forwarding mail sent to attorneys and the returning of mail to attorneys that they mailed to Lair.

55. Defendants conspired to hamper the visiting of attorney Eric Perkins who was retained by plaintiffs to assist plaintiffs gain relief through the courts from the actions of the defendants As a result of the acts of the defendants plaintiffs have suffered irreversible harm.

Damages

56. As a result of the malicious activities of the defendants, which were intentionally inflicted on the plaintiffs to cause plaintiffs harm, plaintiffs suffered, and continue to suffer, loss of consortium, extreme mental anguish, loss of companionship and financial loss. Plaintiff Lair also suffered atrophy in his legs from forced idleness and bedsores, which caused great pain and scarring on his body.

57. Many of the acts of the defendants were committed beyond defendants official capacity and constitute a continuing wrong against the plaintiffs.

WHEREFORE, plaintiffs, Scott Mark Lair and Melinda Darlene Yates, pray that this court grant the following relief, jointly and severally, against all of the defendants;

1. Compensatory damages in excess of $75,000.00
2. Punitive damages in excess of $75,000.00
3. Cost of bringing this suit
4. An Order from this court to move plaintiff Lair back to FCI-TRV, or someplace near plaintiffs home,
5. Such other relief as appears reasonable and just,
6. A jury trial on all counts is hereby demanded.

Respectfully submitted,

Scott Mark Lair

Scott Mark Lair, Pro se
P.O. Box 1500
El Reno, OK 73036

Melinda Darlene Yates

Melinda Darlene Yates, Pro se
C/O Scott Mark Lair
P.O. Box 1500
El Reno, OK 73036

VERIFICATION

I, Scott Mark Lair, state under penalty of perjury that the foregoing is true and correct.

Signed this 15 day of August, 2001.

Scott Mark Lair

Plaintiff

I, Melinda Darlene Yates, state under penalty of perjury that the foregoing is true and correct.

Signed this 1st day of August, 2001.

Melinda Darlene Yates

Plaintiff